DAVID M. HONIGMAN (*pro hac to be filed*)
  dhonigman@manteselaw.com
ALEXANDER E. BLUM (*pro hac to be filed*)
  ablum@manteselaw.com
MANTESE HONIGMAN, P.C.
1361 E. Big Beaver Rd.
Troy, MI 48083
Telephone: (248) 457-9200
Facsimile: (248) 457-9201

MARK POE (S.B. #223714)
  mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs MARK TRUDEAU and TROY
MARTIAL ARTS INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK TRUDEAU and TROY MARTIAL ARTS INC.,<br><br>                    Plaintiffs,<br><br>v.<br><br>GOOGLE, LLC,<br><br>                    Defendant. | Case No. 18-cv-00947<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Mark Trudeau ("Trudeau") and Troy Martial Arts Inc. ("Troy Martial Arts") (collectively with Trudeau, "Plaintiffs"), on behalf of them and all others similarly situated, by their attorneys Gaw | Poe LLP and Mantese Honigman, P.C., file this First Amended Class Action Complaint against Defendant Google, LLC ("Google") and state the following:

## NATURE OF THE ACTION

1.      This action involves Google's years-long scheme of exploiting a known defect in its AdWords advertising program in which it routinely charges its AdWords advertisers for "clicks" which violate the terms of service of the parties' agreement.

2.      Google's AdWords service allows advertisements ("ads") to appear in response to specific search terms (called "keywords") selected by the advertiser when a user inputs that keyword into Google's search engine.  For example, a BBQ restaurant could include keywords such as "barbeque," "ribs," "pulled pork," etc.

3.      AdWords also allows advertisers to select "negative keywords" – i.e., specific search terms that, if included in a search using Google's search engine, are supposed to cause their ads *not to appear* with the search results generated by such searches.  For example, a BBQ restaurant using AdWords could use negative keywords, such as "vegan" or "vegetarian," to ensure that its ads do not appear in response to a user searching Google for articles about vegan lifestyles.

4.      Because an AdWords advertiser is charged every time a user clicks on one of its ads, it has no interest in paying for clicks from users who are unlikely to buy its products or services.

5.      Essential to the efficacy of the negative keyword program and, AdWords in general, is Google's promise to its advertisers that *their ads will not appear if their negative keywords are used in an Internet search using Google's search engine*.  In reality, Google's software search engine causes such ads to appear frequently, even when the search query contains negative keywords, which Google has promised will prevent the ads from appearing in the search results. When this occurs, Google's advertisers end up paying Google for clicks on their ads by individuals whom the advertisers have determined are unlikely to be interested in their product and have conveyed this specific information to Google through their lists of negative keywords.

6.      Google has actual knowledge that its negative keywords system has not and does

not work as represented.  Despite Google's actual knowledge that clicks based on search queries containing negative keywords should not be charged to its AdWords advertisers, it has continued to collect overcharges it knows were incurred through its violation of the AdWords terms and conditions.

7.      To the present day, Google continues to misrepresent that search results generated by a search containing an advertiser's negative keywords will not contain that advertiser's ad and continues to assess improper charges arising therefrom.  Not only does such conduct demonstrate an indifference to its customers' best interests, but, because it has failed and refused to fix the problem, Google is also knowingly making false representations to the public regarding its AdWords program – namely that its advertisers can tailor and personalize their ad campaigns and prevent their ads from being placed in certain circumstances by the use of "negative keywords."

8.      This lawsuit seeks to force Google to repay its customers for unlawful charges that never should have been incurred in the first place, and to require Google to take action to resolve the issue and eliminate the improper charges going forward.  Google has demonstrated that without the intervention of this Court, it will continue to engage in unlawful conduct to the detriment of its advertisers – where the advertisers are powerless to control such conduct, and where its advertisers cannot afford to remove themselves from Google' market (as set forth below, Google has near monopolistic control of Internet searches, as it is the platform for almost 90 percent of internet searches, year after year).

9.      Even though Plaintiff, and many other advertisers, have complained to Google that Google is falsely representing that advertisers will not be charged for clicks based on searches containing negative keywords selected by the advertiser, Google has done nothing to remedy its breach and continues to falsely represent that advertisers can tailor their advertising campaigns and prevent charges through the use of negative keywords.

## **PARTIES**

10.      Mark Trudeau is an individual, domiciled in Oakland County in the State of Michigan.

11.      Troy Martial Arts is a corporation organized under the laws of the State of Michigan

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 18-CV-00947

with its principal place of business located in the City of Troy in Oakland County, State of Michigan.

12.     Google, LLC is a Delaware limited liability company, formed in late 2017, that is a wholly owned subsidiary of Alphabet, Inc., a Delaware corporation, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California.  Google was previously organized as Google Inc., a Delaware corporation with its principal place of business located in Mountain View, California.  Google Inc. and Google LLC shall both be referred to as "Google" in this First Amended Class Action Complaint.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2).  If a class is certified in this action, the amount in controversy will exceed $5,000,000.00, exclusive of interest and costs, and this is a class action in which at least one member of the class is a citizen of a state different from any defendant.

14.     In addition, although Google is located in California, the principal injuries resulting from its conduct have been incurred throughout the world where class members are located. On information and belief, greater than two-thirds of the members of the proposed class are citizens of states and jurisdictions other than California.

15.     This Court has general jurisdiction over Google. Google engages in continuous and systematic activities within the State of California, and its headquarters are located in Mountain View, California, which is within the jurisdiction of this Court.

16.     Venue is proper in this District pursuant to 28 U.S.C. §1391. Specifically, as provided by 28 U.S.C. §1391(c), Google is a limited liability company that is deemed to reside in this District. Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## FACTUAL ALLEGATIONS

17.     Trudeau is the co-owner of Troy Martial Arts, a karate dojo in Troy, Michigan.

18.     Google LLC, and its predecessor, Google Inc. is, among other things, an Internet search provider, as well as the provider of an integrated system of advertising.

**A.      Google's AdWords, AdSense, and AdMob Programs.**

19.     Google operates the most widely used Internet search engine in the world. Google has dominated the market for internet search providers over the time period covered by the allegations herein.   For example, in January 2012, Google's search engine was used by approximately 91.5% of desktop users.  Its closest competitor was Microsoft's Bing search engine, with approximately 3.5% of the market.  In January 2015, Google's search engine was used by 88.1% of desktop users, and its closest competitor was again Bing, with 4.5% of the market. Finally, in October 2016, Google's search engine was used by 90.4% of desktop users, while its nearest     competitor,     Bing,     was     used     by     4%     of     desktop     users. https://www.statista.com/statistics/216573/worldwide-market-share-of-search-engines/      (Last visited February 18, 2018.)

20.     Google runs over one million servers worldwide and processes over one billion search requests each day.  It generates revenue primarily from displaying the online ads of its customers.  Google operates its advertising program through three units – "AdWords," "AdSense," and "AdMob."

21.     In general, Google's AdWords program allows advertisers to display ads on its search results pages and websites, as well as the webpages of certain third-parties.  Individuals who utilize AdWords to display ads pay Google each time their ad is "clicked" by an individual using its Internet-search-based products.

22.     For example, Google's 2012 Form 10-K promotes the AdWords program as follows:

> The goal of AdWords, our primary auction-based advertising program, is *to deliver ads that are so useful and relevant to search queries or web content that they are a form of information in their own right*. With AdWords, advertisers create simple text-based ads that then appear beside *related search results or web content* on our websites and on thousands of partner websites in our Google Network, which is the network of third parties that use our advertising programs to deliver *relevant ads with their search results and content*. Most of our AdWords customers pay us on *a cost-per-click basis, which means that an advertiser pays us only when a user clicks on one of its ads*. We also offer AdWords on a cost-per-impression basis that enables advertisers to pay us based on the number of times their ads appear on our websites and our Google Network Members' websites as specified by the

advertiser.[1]

*Id.*

23.     The key to AdWords' success, Google represents, is the program's ability to provide the advertiser with the ability to control the placement of her ads, according to time, place, and the general characteristics of the Internet user, such as age and gender.

24.     According to Google's AdWords Help webpage, an advertiser using AdWords decides how much:

> you want to spend, and ***you pay only when someone interacts with your ad***, like clicking your text ad or watching your video ad. ***You base your bids on whatever is best for your business***." https://support.google.com/adwords/answer/6336021 (last visited February 18, 2018.)

25.     The advertiser does this by controlling, among other things: the keywords that trigger her ad's placement, the time of day her ad appears, and the characteristics of the individual user of Google's search engine:

> When you advertise alongside search results on the Google Search Network, you select ***keywords to help target your ads to people searching for related terms***. You ***can also choose*** to show your ads at ***certain times of day***, and ***specify a location and language***.

*Id.*

26.     Google represents that AdWords charges the advertiser only for actual clicks on the advertiser's ad, where the group of potential "clickers" has already been "screened" as someone likely to be interested in the advertiser's product or service by the methods described above:

> ***You…pay only when someone interacts with your ad***, like clicking your text ad or watching your video ad. ***You base your bids on whatever is best for your business***.

*Id.*

**B.     The Use of Negative Keywords in Google's Advertising Programs.**

27.     Of particular importance to the allegations set forth herein is AdWords' use of a system of "negative keywords," which, according to Google's website, "let[s] you exclude search

---

[1] Unless specifically stated otherwise, all emphasis herein is added.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 18-CV-00947

terms from your campaigns and help[s] you focus on only the keywords that matter to your

customers."      https://support.google.com/adwords/answer/2453972?hl=en&ref_topic=3122865

(last visited February 19, 2018.)  Google represents that the effective use of "negative keywords"

leads to "better targeting" so that one's ad appears only "in front of interested users," thereby

"increas[ing] your return on investment (ROI)." *Id.*

28.      "For example, when you add 'free' as a negative keyword to your campaign or ad

group, you tell AdWords ***not to show your ad for any search containing the term 'free.'***"

https://support.google.com/adwords/answer/105671?hl=en (last visited February 25, 2018.)

29.      Negative keywords are used in the following three ways, as described on Google's

website:

    a.    <u>Negative broad match</u> – in this instance, the advertiser's ad will not be triggered by a search that contains any of the individual words in an advertiser's negative keyword, as in the following example, which appears on one of Google's webpages in the "AdWords Help" portion of its website, as in the following example:

## Example

Negative broad match keyword: **running shoes**

| Search | Could an ad show? |
| --- | --- |
| blue tennis **shoes** | ✅ |
| Google **running** gear | ✅ |
| blue **running shoes** | ❌ |
| **shoes running** | ❌ |
| **running shoes** | ❌ |

    b.    <u>Negative phrase match</u> – in this instance, the advertiser's ad will not appear with the search results that are generated by searches that contain the words in the negative keyword in the specific order in which they appear in the negative keyword, as in the following example, which appears on the same webpage identified in the preceding paragraph:

**Example**

Negative phrase match keyword: "**running shoes**"

| Search | Could an ad show? |
|---|---|
| blue tennis **shoes** | ✅ |
| Google **running** gear | ✅ |
| blue **running shoes** | ❌ |
| **shoes running** | ✅ |
| **running shoes** | ❌ |

    c. <u>Negative exact match</u> – in this case, the negative keyword works essentially like that in the negative phrase match, except that the advertiser's ad MAY appear in searches that include the negative keyword phrase but with additional words as well, i.e. only searches that exactly match the negative keyword will trigger the exclusion of the advertiser's ad, as in the following example, which appears on the same webpage as the two preceding examples:

**Example**

Negative exact match keyword: [**running shoes**]

| Search | Could an ad show? |
|---|---|
| blue tennis **shoes** | ✅ |
| Google **running** gear | ✅ |
| blue **running shoes** | ✅ |
| **shoes running** | ✅ |
| **running shoes** | ❌ |

*See* https://support.google.com/adwords/answer/2453972?hl=en&ref_topic=3122865 (last visited on February 19, 2018).

    30.    Google does not inform the user of its AdWords services that, despite the representations identified above, an advertiser's ad may be displayed ***even when searches are performed containing the advertiser's negative keywords***.

    31.    Thus, using the most restrictive format described above – negative exact match – there are many circumstances where an advertiser choosing "running shoes" as a negative keyword

would still have its advertisement appear in response to a Google search for the exact phrase "running shoes."

**C.      Troy Martial Arts Is Improperly Charged by Google**

32.      Troy Martial Arts uses Google's AdWords service and has been using the service continuously since in or about April 2012 when it accepted, by way of a clickwrap contract, the AdWords terms of service and created an AdWords account.

33.      In other words, Troy Martial Arts agreed to pay a fee to Google (ranging between $0.50 and $5.00) when a person using Google's search engine: (1) searches, for example, for "Martial arts for adults in Troy, Michigan" and (2) clicks on the resulting Troy Martial Arts' link, which appears in a Troy Martial Arts' ad at the top of the user's search results and resembles an actual search result.

34.      Google describes the AdWords service as follows:

> On PCs, tablets, and smartphones, if the words people type into Google match your keywords, your ad can appear above the search results.
>
> You only pay when people click — either to go to your website or to call your business. With millions of searches per day on Google, you can make sure your customers notice your brand, consider your offerings, and take action. https://adwords.google.com/home/how-it-works/search-ads/#?modal_active=none (last visited February 19, 2018.)

35.      Troy Martial Arts also makes use of the AdWords "negative keywords" feature, as described above, which it uses to prevent its ad from appearing in the search results of users who are unlikely to be interested in the karate instruction Troy Martial Arts provides.

36.      For example, the potential customer's proximity to Troy Martial Arts is a key factor in whether an individual will be interested in using Troy Martial Arts' services.

37.      Therefore, Troy Martial Arts uses negative keywords to filter out searches where the subject matter is related to Troy Martial Arts' business, but the search terms make it clear that the user of Google's search engine is located at such a distance from Troy Martial Arts that he or she is unlikely to become a customer of Troy Martial Arts.

38.     For example, Troy Martial Arts does not believe that someone in Southfield, Michigan (a Detroit suburb located to the northwest of the city) would travel to Troy, Michigan (a Detroit suburb located to the northeast of the city) for karate classes.   Troy Martial Arts has therefore included "Southfield" in its database of negative keywords.   As a result, if a user of Google's search engine performs a search for "martial arts for adults Southfield," Troy Martial Arts' ad does not appear among the search results.

39.     If Google's search engine and AdWords service worked in the manner represented by Google, Troy Martial Arts would be able to decrease its overall costs by eliminating clicks by individuals who are unlikely to become customers.

40.     However, Google does not disclose that Troy Martial Arts' ad may appear atop search results even when the search performed contains one of Troy Martial Arts' negative keywords.   If Troy Martial Arts' ad is clicked under those circumstances, the result is that Troy Martial Arts is charged for a click that it had determined will not result in the generation of a Troy Martial Arts customer.   Such an occurrence constitutes a violation by Google of the parties' agreement.

41.     Google's breach of the agreement occurs when it employs its automatic spell corrector, which is a feature in its search engine that overrides the terms input by a user of its search engine and then performs a search using the terms that Google has unilaterally determined that the search user "intended" to input.

42.     A search based on the user's actual input will only be run if the user clicks a link at the top of Google's search results, which asks the user if he or she meant to use the exact words he or she inputted and requests that Google's search engine run **another search**, using the words actually inputted by the user.

43.     Unless the user chooses to run the original search (which in most instances contains a mistyped or misspelled word), ***the only search that Google performs in response to the user's input is the search that Google generated based on what it thought the user "intended" to input and which may contain an advertiser's negative keyword***.

10

44.     For example, when one searches for "martial arts for adults in **D**outhfield" (i.e. the user has mistyped the name "Southfield"), Google will override the user's actual input and perform a search with "Southfield" spelled correctly, and the results that are displayed are those generated by the search engine as if the user had always intended to use the word "Southfield."

45.     At the top of its search results, Google states that it is "***Showing results for martial arts for adults in Southfield***," ignoring Troy Martial Arts' negative keyword of "Southfield." Google displays Troy Martial Arts' ad atop the search results because Google connects the ad to the text input by the user and not to the search run by Google that is supposed to exclude Troy Martial Arts' ad because the search performed by Google's search engine (and the actual search that generates the results Google provides to its user) contains one of Troy Martial Arts' negative keywords.

46.     Google's conduct described herein constitutes a breach of the parties' agreement.

47.     The situation just described is represented in the following screenshots.

48.     First, the user inputs the search "martial arts for adults in troy michigan," and Plaintiff's ad correctly appears at the top of the user's search results:

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 18-CV-00947

**Screenshot 1**

> Troy Martial Arts' ad appears at the top of the search results because the search contains Troy Martial Arts' keywords, and it does not contain any of Troy Martial Arts' negative



49.    Troy Martial Arts is the first search result because Trudeau has listed "martial arts" and "troy" as keywords associated with Troy Martial Arts.

50.    If the user of Google's search engine performs this search and clicks on the link to Troy Martial Arts' website, Troy Martial Arts will be charged a small fee (between $0.05 and $5.00).

51.    Next, Screenshot 2 shows the search results generated by a search for "martial arts for adults southfield."  Because Trudeau has included "Southfield" as a negative keyword, Troy Martial Arts' ad and website do not appear in the search results.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 18-CV-00947

**Screenshot 2**



Troy Martial Arts' ad does not appear in the search results because the search that was run contained the negative keyword "southfield."

52.    In Screenshot 3, the user has typed "martial arts for adults douthfield," which Google's search engine interprets as "martial arts for adults southfield" and therefore displays search results for the latter.  As seen above, this search ***should not*** trigger the display of Troy Martial Arts' ad because the search that Google ran contains one of Troy Martial Arts' negative keywords, but the reality is far different:

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 18-CV-00947

**Screenshot 3**



Google overrides what it interprets as a "typo" by the user and informs the user that it has run and is showing results for a search containing one of Troy Martial Arts' negative keywords.

Yet, even though the search performed by Google contains Troy Martial Arts' negative keywords, Troy Martial Arts' ad appears atop the user's search results, in violation of the

53.    Google provides click-analytics tools that enable any AdWords advertiser to precisely determine, for each click it receives on its advertisement, which search terms that particular user inputted in order to see that advertisement.  Through its analysis of these click-analytics tools, Troy Martial Arts has determined that approximately one out of every two-hundred clicks occurs when Google improperly places Troy Martial Arts' ad at the top of a search containing one of Troy Martial Arts' negative keywords.

54.    Each of those improper clicks causes Troy Martial Arts to incur damages of between $0.50 and $5.00, with the precise amount for each click logged in Google's database.

55.    Despite Troy Martial Arts' numerous contacts with Google to inform it of the improper charges, such improper charges have been ongoing and continuous, up to and including the present day.

**D.    Applicable Terms of Service to the Class.**

56.    In or about April 2012, when Troy Martial Arts and Google entered into their agreement regarding Google's AdWords service, the parties' agreement was subject to Google's General Terms of Service in effect in 2012 (the "2012 Terms of Service"), as no AdWords-specific terms of service then existed.

57.     The 2012 Terms of Service provide that additional terms of service, i.e. terms of service that did not exist at the time the parties entered into the contract, shall apply to the parties' contract and, to the extent that there is a conflict between the as yet unwritten terms of service and the 2012 Terms of Service, the unwritten terms of service shall apply.

58.     The terms of service specific to AdWords were not published until 2013, and have been amended twice, in 2014 and in 2017.  Such terms of service shall be referred to herein as the "2013 AdWords Terms of Service," the "2014 AdWords Update," and the "2017 AdWords Update," respectively.

59.     Neither the 2012 Terms of Service, nor the 2013 AdWords Terms of Service, include any ban on class actions or any requirement that an aggrieved party submit its claims to arbitration.

60.     Likewise, the 2014 AdWords Update does not include any limitation on class actions and contains no arbitration requirement.

61.     Moreover, in the 2012 Terms of Service and in the 2013 AdWords Terms of Service, and the 2014 AdWords Update, Google specifically represented that any changes it made to its contract would not apply retroactively.

62.     The first time that either a ban on class actions or a requirement that Google's aggrieved customers submit disputes with Google to arbitration was in the 2017 AdWords Update. On or about August 25, 2017, the Wall Street Journal published a widely-read article describing how Google had detected a surge of ad fraud during the second quarter of 2017 on some of its advertising platforms.  Google had a long-standing contractual promise to offer full refunds or credits to any advertisers when any clicks on their advertisements were fraudulently procured.  But as this article explained, for those advertisers affected by this fraud (including AdWords advertisers), Google was offering only a modest reimbursement – about 7-10% of the total amounts spent by those advertisers (with some advertisers apparently getting much less).  Not surprisingly, many advertisers were unhappy with this development.

63.     Apparently, some executive at Google read this August 25, 2017 article and realized that it publicly exposed that Google was not giving full refunds or credits as contractually obligated.

1  Thus, on or around September 1, 2017, Google suddenly promulgated the 2017 AdWords update,

2  which included the arbitration clause and the class action waiver.  It is plainly obvious that Google

3  made such changes in response to the August 25, 2017 Wall Street Journal article to prevent

4  advertisers (especially smaller advertisers) from suing Google and obtaining redress.

5  64.  The members of the class proposed herein were each subject to the exact same

6  contractual provisions as Troy Martial Arts, i.e. the 2012 Terms of Service, the 2013 AdWords

7  Terms of Service, the 2014 AdWords Update, and the 2017 AdWords Update (collectively, the

8  "AdWords Terms of Service").

9  65.  Each member of the proposed class members accepted the AdWords Terms and

10  Conditions in the same manner, by clicking a webpage "button" indicating acceptance of the terms.

11  **CLASS ALLEGATIONS**

12  66.  Plaintiffs reallege and incorporate all preceding allegations by reference as if set

13  forth fully herein.

14  67.  Plaintiffs bring this action, pursuant to Fed. R. Civ. P. 23, on behalf of themselves

15  and all other similarly situated persons who have been affected by Google's actions. The proposed

16  class is defined as:

17  All natural persons and businesses who selected negative keywords in conjunction
   with their participation in Google's AdWords advertising program, and who
18  thereafter paid Google for internet users' "clicks" on ads that were displayed in
   conjunction with search results, where those search results (as auto-corrected by
19  Google) contained one or more of that class member's specified negative keywords.

20  The proposed class period is from February 28, 2014 through the date judgment enters.  Plaintiffs

21  specifically reserve their right to amend this proposed class definition based on discovery and any

22  interlocutory rulings this Court may make.

23  68.  This action is brought and may properly be maintained as a class action pursuant to

24  Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

25  69.  The number of people in the class is so numerous as to make joinder impractical,

26  Plaintiffs' claims are typical of the claims of the class members, and all claims are based on the

27  same legal and remedial theories.

28

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 18-CV-00947

70. There are questions of law and fact which are common to the members of the class, and these questions predominate over any question affecting only individual members.

71. The principal common issues include: whether Google breached its contracts with AdWords users by displaying those users' ads in conjunction search results generated by searches containing the users' negative keywords, and whether those users are entitled to damages and/or restitution for payments they made to Google as a result of those clicks. These common questions of fact and law predominate over any individual questions that might pertain to the individual class members' claims, or to any individual defenses Google may have to those claims.

72. The actual number of times an ad was clicked in the circumstances under which Google is liable to all class members does not affect Google's liability but instead will determine the damages incurred by each class member as a result of Google's common practices.

73. The claims of the named Plaintiffs are typical of the claims of the entire class.

74. Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein. Plaintiffs are similarly situated with all persons who participated in the AdWords service. Plaintiffs have suffered similar injuries as the members of the class they seek to represent, and they were wronged, wish to obtain redress of the wrongs, and want Google stopped from perpetrating similar wrongs against others. To that end, Plaintiffs have retained counsel experienced in handling class action suits. Neither Plaintiffs, nor their counsel, have any interest which may cause them not to vigorously pursue this action.

75. Plaintiffs are representative of all individuals in the class and will, as the representative parties, fairly and adequately protect the interests of the entire class.

76. Maintaining this action as a class action is superior to other available methods of adjudication since it will promote the convenient administration of justice and will achieve a fair and efficient adjudication of the controversy in this matter because there are over one million potential class members.

77. Further, the prosecution of separate actions by individual members of the class would create a risk of (i) inconsistent or varying adjudications that would confront Google with

incompatible standards of conduct, and (ii) adjudications with respect to individual members of the class that would as a practical matter substantially impair, impede, or be dispositive of the interests of other members of the class not parties to the adjudication because of the doctrine of res judicata.

78.    Final, equitable, and declaratory relief are appropriate because Google should be required, in addition to the payment of damages, to begin exercising its duty of good faith and fair dealing.

79.    The action is manageable as a class action because proofs are the same for all members of the class on all major issues.

80.    In view of the nature of the issues and the expense of litigation, the separate claims of the individual class members are insufficient in amount to support prosecution of separate actions in an efficient manner.

## **FIRST CAUSE OF ACTION**

### **(Breach of Contract)**

81.    Plaintiffs reallege and incorporate by reference all allegations as if set forth fully herein.

82.    Plaintiffs and the members of the proposed class entered into an agreement with Google, as set forth above.

83.    This agreement is mutual, enforceable, and supported by consideration.

84.    Plaintiffs and the members of the proposed class fully performed under the agreement, as they have paid in full all invoices issued to them by Google.

85.    Google has violated its contractual obligations in a number of ways, as set forth herein.

86.    Google's breaches have damaged Plaintiffs and the members of the proposed class, as they have been forced to pay for unwanted clicks on their advertisements.

## **SECOND CAUSE OF ACTION**

### **(Breach of Implied Covenant of Good Faith and Fair Dealing)**

87.    Plaintiffs reallege and incorporate by reference all allegations as if set forth fully herein.

88.     Plaintiffs and the members of the proposed class entered into an agreement with Google, as set forth above.

89.     This agreement is mutual, enforceable, and supported by consideration.

90.     Every contract imposes the duty that neither party do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

91.     Should it be determined that Google did not have a contractual duty to prevent Plaintiffs and the members of the proposed class from being charged for clicks on their advertisements that appear in response to search terms featuring their negative keywords, then in the alternative, Google has breached its duty of good faith and fair dealing by knowingly allowing such charges to occur, as set forth above.

92.     As a direct and proximate result of Google's breach of the duty of good faith and fair dealing, Plaintiffs and the members of the proposed class have been damaged, as they have been forced to pay for unwanted clicks on their advertisements.

## THIRD CAUSE OF ACTION

### (Violations of the California Business & Professions Code, §17200 et seq.)

93.     Plaintiffs reallege and incorporate by reference all allegations as if set forth fully herein.

94.     The AdWords Terms of Service provide that California law shall be applied to all disputes arising between Troy Martial Arts and Defendant.

95.     Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" or "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice." Google has violated § 17200's prohibition against engaging in an unlawful act or practice by, inter alia, charging Plaintiffs for clicks on ads that appeared with search terms that were on their list of negative keywords.

96.     Google's ongoing charges for such clicks constitute "unfair competition" as that term is defined in § 17200.

97.     Plaintiffs and the members of the proposed class reserve their right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation

and discovery warrants. Such conduct is ongoing and continues to this date.

98.     Google's business practices, as detailed above, violate the UCL's "unfair" prong in that they are unethical, oppressive, unscrupulous, and violative of fundamental policies of this State.  Further, any justifications for Google's wrongful conduct are outweighed by the adverse effects of such conduct.

99.     Google's business practices, as detailed above, also violate the UCL's "unfair" and "fraudulent" prongs in that Plaintiffs and other members of the public are likely to be deceived by Google's false representation that such AdWords users' ads would not be displayed in search results generated from search terms that include negative keywords, but are in fact displayed in such search results when Google auto-corrects what it perceives as typos or misspellings of those negative keywords.  A reasonable person would attach importance to this misrepresentation in determining his choice of action in using AdWords and selecting negative keywords.  For example, had Google not misrepresented the functioning of negative keywords, a reasonable AdWords user would specifically identify hundreds of negative keywords, embracing all possible misspellings, typos, and other permutations of each of its core negative keywords.

100.     Plaintiffs and the other members of the proposed class have lost money as a result of Google's unfair and fraudulent business practices, in that they have been charged for clicks – and fully paid all such charges – on their ads in circumstances where Google had represented that such ads would not be displayed.  Google's conduct has caused and continues to cause substantial injury to Plaintiffs and the other members of the proposed class.  They have suffered injury in fact and incurred damages as a result of Google's unfair conduct.

101.     Additionally, pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Google to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Google to return the full amount of money improperly collected from Plaintiffs and the other members of the proposed class.

## **FOURTH CAUSE OF ACTION**

### **(False and Misleading Advertising in Violation of the California Business & Professions Code §17500 et seq.)**

102.    Plaintiffs reallege and incorporate by reference all allegations as if set forth fully herein.

103.    California Business & Professions Code §17500 et seq. prohibits the dissemination in any manner of representations which are likely to deceive members of the public to purchase products and services such as Google's AdWords services.

104.    Google's acts and practices as described herein have deceived and/or are likely to deceive Plaintiffs and the other members of the proposed class. Google used its website and SEC filings, as well as other Internet based advertising and social media, such as Facebook and Twitter, to extensively market and advertise its AdWords services, including the use of negative keywords to eliminate being charged for clicks relating to Internet searches containing the user's negative keywords.

105.    By its actions, Google has been and is disseminating uniform advertising concerning its AdWords services and negative keywords, which by its nature is unfair, deceptive, untrue, or misleading within the meaning of California Business & Professions Code §17500 et seq. Such advertisements are likely to deceive, and continue to deceive, the consuming public for the reasons detailed above.

106.    The above described false, misleading, deceptive advertising that Google disseminated continues to have a likelihood to deceive in that Google has failed to disclose the true and actual nature of the negative keywords portion of its AdWords services, which continues to create a misleading perception of the efficacy of the use of negative keywords in designing an advertising campaign to be implemented through AdWords.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

107.    Plaintiffs reallege and incorporate by reference all allegations as if set forth fully herein.

108.    As set forth above, on or around September 1, 2017, Google suddenly changed the terms of its contract with all AdWords advertisers.  The primary changes it effected to this agreement were that AdWords advertisers like Plaintiffs and the other members of the proposed

1   class are now purportedly required to arbitrate their disputes with Google and are precluded from

2   bringing any class actions against Google.

3          109.    Google made such changes directly in response to the August 25, 2017 Wall Street

4   Journal article exposing that Google only refunded to its advertisers a fraction of the fees it collected

5   from ad traffic run through DoubleClick Bid Manager that Google had internally determined to be

6   fraudulent or otherwise invalid.  Google's practice was at odds with its repeated representations to

7   advertisers that it will issue full refunds to them for clicks later determined by Google to be invalid.

8          110.    Plaintiffs seek a declaration, on behalf of themselves and all members of the

9   proposed class, that this new arbitration clause is substantively and procedurally unconscionable.

10  To the extent this clause requires Plaintiffs and the members of the proposed class to arbitrate any

11  disputes with Google arising prior to the effective date of this arbitration clause, it is unenforceable

12  under principles of California contract law.  Importantly, Plaintiffs do not seek to invalidate the

13  arbitration clause with respect to prospective claims by them, only to retrospective claims.

14         111.    The new arbitration clause is substantively unconscionable because it is

15  transparently one-sided in favor of Google.  As stated earlier, Google immediately pushed through

16  this revision directly in response to the public exposure of its fraudulent practices in order to prevent

17  its aggrieved advertisers from taking legal action.  Moreover, Plaintiffs and the average member of

18  the proposed class would not have enough in the value of their individual claims to justify the costs

19  of hiring an attorney to pursue those claims (especially since there is no attorney fee shifting

20  provision in the parties' contract), and thus the class action waiver transparently operates to deprive

21  them of their ability to get meaningful redress.

22         112.    The new arbitration clause is also substantively unconscionable because it applies

23  retroactively to all claims possessed by Plaintiffs and the other members of the proposed class, even

24  though those other claims were governed under a different iteration of the parties' contract, one

25  that specifically provided that subsequent changes would not have retroactive effect.

26         113.    The new arbitration clause is procedurally unconscionable for many reasons, not

27  least of which is that it is presented as a take-it-or-leave it provision to Plaintiffs and the other

28  members of the proposed class.  In particular, Google told all AdWords advertisers that if they

1  chose not to accept the new terms and conditions, Google would suspend all of their advertisements
2  on Google's advertising platforms.  Plaintiffs and the other members of the proposed class had
3  spent years and countless funds utilizing and acclimating to Google's platforms, yet all of that work
4  and money would have been rendered pointless unless they agreed to surrender their rights to seek
5  legal redress against Google.

6        114.    Finally, Plaintiffs and the other members of the proposed class additionally seek a
7  declaration that Google's new arbitration clause is invalid, to the extent it requires arbitration of
8  retrospective claims against Google, on grounds of breach of contract and breach of the implied
9  covenant of good faith and fair dealing.  As set forth above, in all iterations of the parties' contract,
10  Google specifically represented to everyone that any "changes to the Terms **will not apply**
11  **retroactively**[.]"

**SIXTH CAUSE OF ACTION**

**(Unjust Enrichment)**

14        115.    Plaintiffs reallege and incorporate by reference all allegations as if set forth fully
15  herein.

16        116.    Plaintiffs plead this cause of action in the alternative, in the event that the Court
17  determines that the subject matter of Plaintiffs' claims is not governed by an express contract
18  between the parties.

19        117.    Google has received, and continues to receive, an unjust benefit at the expense of
20  Plaintiffs and the other members of the proposed class, as set forth above.

21        118.    As a direct and proximate result of Google's wrongful conduct, Plaintiffs and the
22  other members of the proposed class were subject to improper and unlawful charges collected by
23  Google and are therefore entitled to reimbursement of all sums unjustly paid to Google in
24  connection with the AdWords services.

**PRAYER**

26       WHEREFORE, as to all Counts alleged herein, Plaintiffs Mark Trudeau and Troy Martial
27  Arts Inc. pray for judgment as follows:

28       1.    For judgment against defendant Google, LLC.

     FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 18-CV-00947

2.      For compensatory, special, actual, incidental, consequential, exemplary and other damages to which they are entitled;

3.      For restitution of all sums ill-gotten by Google;

4.      For equitable, common law, and statutory interest;

5.      For a permanent injunction;

6.      For declaratory relief;

6.      For attorney's fees, and costs; and

7.      For such other and further relief as the Court deems just and proper.

Dated:  February 28, 2018                          GAW | POE LLP

By: _____

Randolph Gaw
Attorneys for Plaintiffs Mark Trudeau and
Troy Martial Arts Inc.

**JURY DEMAND**

Plaintiffs Mark Trudeau and Troy Martial Arts Inc. hereby demand a jury trial for their claims against Defendant Google, LLC.


Dated:  February 28, 2018                    GAW | POE LLP

                                             By:
                                             _____
                                             Randolph Gaw
                                             Attorneys for Plaintiffs Mark Trudeau and
                                             Troy Martial Arts Inc.

1