# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

MARK TRUDEAU, ET AL.,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

Case No. 18-cv-00947-BLF

**ORDER GRANTING MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND TERMINATING AS MOOT IN PART MOTION TO DISMISS; DISMISSING ACTION WITHOUT PREJUDICE**

[Re: ECF 25]

Plaintiffs Mark Trudeau and Troy Martial Arts Inc. bring claims on behalf of themselves and a putative class of others similarly situated in connection with Defendant Google LLC's alleged misrepresentations to advertisers using its AdWords program. Before the Court is Defendant's Motion to Compel Arbitration or Alternatively Dismiss Plaintiffs' First Amended Class Action Complaint. Mot., ECF 25. The Court heard oral argument on the motion on September 27, 2018. For the reasons stated herein, Defendant's Motion to Compel Arbitration is GRANTED. Defendant's Motion to Dismiss is GRANTED IN PART and TERMINATED AS MOOT IN PART. The action is DISMISSED without prejudice.

## I. BACKGROUND

Defendant Google LLC ("Google") runs an advertising program called AdWords, which allows an advertiser to tie his advertisement to specific keywords, such that users of Google see the advertisement when they search for those keywords. First Am. Class Action Compl. ("FACC") ¶ 2, ECF 9. AdWords also allows the advertiser to select certain *negative* keywords, such that users of Google *cannot* see the advertisement when they search for those negative keywords. *Id.* ¶ 3. But Plaintiff Troy Martial Arts Inc. and its co-owner Plaintiff Mark Trudeau

(collectively, "Trudeau") claim that this negative keyword functionality does not work as promised. *See generally* FACC. Specifically, when a user misspells a negative keyword in his or her search, Google allegedly corrects that misspelling and then runs the search results for that word. *See, e.g.*, *id.* ¶¶ 30–31. In that scenario, AdWords displays the advertisement, even though the search includes the negative keyword. *Id.* Trudeau thus claims that Google makes material misrepresentations about AdWords' functionality. He brings the following causes of action on behalf of himself and a putative class: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) violation of the Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200, *et seq.*; (4) violation of the False Advertising Law, Cal. Bus. Prof. Code §§ 17200, *et seq.*; (5) declaratory relief that the arbitration clause included in the 2017 AdWords Terms of Service is procedurally and substantively unconscionable and unenforceable; and (6) unjust enrichment. *Id.* ¶¶ 81–118.

Trudeau first began using the AdWords program in January 2012, when he accepted the AdWords Terms of Service via a clickwrap agreement.[1] *See id.* ¶ 32; Sung Decl. ISO Mot. ¶¶ 6–7, 14, ECF 25-1. At the time, the 2006 Terms of Service ("TOS") were in effect. *See* Sung Decl. ¶ 6. In 2013, Google modified the Terms and pre-existing advertisers were given notice and asked to review and accept these terms. *Id.* Section 11 of the 2013 TOS included the following provision:

> **11 Term**. Google may add to, delete from or modify these Terms at any time without liability. The modified Terms will be posted at www.google.com/ads/terms. Customer should look at these Terms regularly. The changes to the Terms will not apply retroactively and will become effective 7 days after posting. However, changes specific to new functionality or changes made for legal reasons will be effective immediately upon notice. . . .

Trudeau Decl. ISO Opp., Ex. 1 ("2013 TOS"), ECF 34-2. Several other versions of Google's Terms of Service throughout the relevant period stated that "[c]hanges [to the terms] will not apply retroactively and will become effective no sooner than fourteen days after they are posted." *See Id.*, Ex. 2, ECF 34-3 (March 2012); *Id.*, Ex. 3, ECF 34-4 (November 2013); *Id.*, Ex. 4, ECF

---

[1] The AdWords account was registered to Troy Martial Arts, Inc.; Plaintiff Trudeau does not have a separate AdWords account. Song Decl. ¶ 14.

2

34-5 (April 2014); *Id.*, Ex. 5, ECF 34-6 (October 2017).

The Terms were modified again in September 2017. Sung Decl. ¶ 7. Like other versions of the Terms of Service, the 2017 TOS includes provisions relating to changes to the terms. In Section 12, the 2017 TOS states, in relevant part:

> 12 Changes to Terms. Google may make non-material changes to these Terms at any time without notice, but Google will provide advance notice of any material changes to these Terms. The Terms will be posted at google.com/ads/terms. Other than changes made under Section 13(G), the changes to the Terms will not apply retroactively and will become effective 7 days after posting. However, changes made for legal reasons will be effective immediately upon notice.

*Id.*, Ex. C ("2017 TOS"), ECF 25-2. Section 13(G) in turn states:

> G. Future changes to Dispute Resolution Agreement. If Google makes any changes to this Dispute Resolution Agreement (other than a change to Google's Notice Address), Customer or Advertiser may reject any such change by notifying Google via webform as set forth in Section 13(F) within 30 days of the change. It is not necessary to submit a rejection of the future change to this Dispute Resolution Agreement if Customer or Advertiser had properly opted out of arbitration in compliance with the requirements of Section 13(F). By rejecting a future change, Customer or Advertiser is agreeing that it will arbitrate any dispute in accordance with the language of this Dispute Resolution Agreement, as modified by any changes that Customer or Advertiser did not reject.

Finally, Section 14 governs miscellaneous provisions and states:

> 14 Miscellaneous. . . . (d) These Terms are the parties' entire agreement relating to their subject matter and supersede any prior or contemporaneous agreements on those subjects.

*Id.*

The 2017 TOS also included, for the first time, an arbitration provision and a class action waiver. Sung Decl. ¶ 8. The arbitration provision covers, in relevant part:

> 13 Dispute Resolution Agreement.
>
> A. Arbitration of disputes. Google, Customer, and Advertiser agree to arbitrate all disputes and claims between Google and Customer or between Google and Advertiser that arise out of or relate in any way to the Programs or these Terms. This agreement to arbitrate ("Dispute Resolution Agreement" or "Section 13") is intended to be broadly interpreted and includes, for example:
>
> 1. claims brought under any legal theory;
>
> 2. claims that arose before Customer or Advertiser first accepted any version of these Terms containing an arbitration provision;

> 3. claims that may arise after the termination of Customer's or Advertiser's Use of the Programs; . . . .

The arbitration provision also included a 30-day opt out period, stating:

> F. 30-day opt out period. Customer (both for itself and for any Advertiser that Customer represents) and Advertiser have the right to opt out of this Dispute Resolution Agreement. A Customer or Advertiser who does not wish to be bound by this Dispute Resolution Agreement (including its waiver of class and representative claims) must notify Google as set forth below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision (unless a longer period is required by applicable law). Customer's or Advertiser's notice to Google under this subsection must be submitted via webform available at adwords.google.com/nav/arbitration. An opt-out notice does not revoke or otherwise affect any previous arbitration agreement between Customer and Google or between Advertiser and Google.

Clicking the link in this section took the advertiser to a webpage containing the opt out procedure. Sung Decl. ¶ 13; *see id.*, Ex. D, ECF 23-2.

Google gave notice of the 2017 TOS to the AdWords advertisers through multiple means, including through a direct email to the advertisers, a public blog post, and an alert on the advertisers' AdWords account. Sung Decl. ¶ 7. Each notice directed the advertisers to a webpage where they could review and accept the modified terms, which were displayed in a single embedded window. *Id.* ¶ 9. Above the TOS window was the following admonition: "Please review these Terms carefully. They include the use of binding arbitration to resolve disputes rather than jury trials or class actions. Please follow the instructions in the terms below if you wish to opt out of this provision." *Id.*, Ex. B, ECF 25-2. Advertisers were then prompted to accept or decline the terms.

Google notified Trudeau of the 2017 TOS by both email and an alert in his AdWords account. Sung Decl. ¶ 16. Trudeau accepted the 2017 TOS on September 15, 2017 and did not attempt to opt out of the arbitration provision. *See id.* ¶¶ 17–18.

## II. LEGAL STANDARD

### A. Motion to Compel

The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce. 9 U.S.C. §§ 1 *et seq.* When it applies, the FAA preempts state laws that conflict with its provisions or obstruct its objective to enforce valid arbitration agreements. *See AT&T Mobility*

*LLC v. Concepcion*, 563 U.S. 333, 339, 341–43 (2011).

The FAA reflects a strong policy in favor of arbitration. *Id.* at 339; *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 322 (1983). Under the FAA, contractual arbitration agreements must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." *Newton v. Am. Debt Servs., Inc.*, 549 Fed. Appx. 692, 693 (9th Cir. 2013) (quoting 9 U.S.C. § 2). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (internal citations omitted); *Weeks v. Crow*, 113 Cal. App. 3d 350, 353 (1980) ("The court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made." (citation omitted)). "[W]here a contract contains an arbitration clause," moreover, "courts apply a presumption in favor of arbitrability . . . and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts v. Atl.-Pac. Capital, Inc.*, 497 Fed. App'x. 740, 742 (9th Cir. 2012).

A district court faced with a petition to enforce an arbitration clause engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). A district court does not consider challenges to the contract as a whole, but rather only specific challenges to the validity of the arbitration clause itself. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (noting the "two types of validity challenges" but holding that only challenges to the validity of the agreement to arbitrate are "relevant to a court's determination whether the arbitration agreement at issue is enforceable").

### B. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the

5

plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**C.    Judicial Notice**

The Court may generally consider matters properly subject to judicial notice. *See Tellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In support of its motion, Google filed a Request for Judicial Notice and Incorporation by Reference of, in relevant part, the 2017 TOS, the opt-out website, and the website at which advertisers accepted or declined the TOS. *See* Mot. at 23–24. Trudeau also incorporates additional versions of the TOS into his Opposition. *See* Opp. at 3. The Court agrees to take judicial notice of these documents, as they are not the subject of reasonable dispute and their authenticity is not in question. Fed. R. Evid. 201. Likewise, several versions of the TOS are incorporated by reference into the Complaint. *See* FACC ¶¶ 56–65, 107–114. The documents are accepted for what they represent, but the Court is not bound by any specific fact findings and legal conclusions set forth in them.

## III. DISCUSSION

In order to determine whether these claims must be compelled to arbitration or be litigated in this court, the Court necessarily must decide whether the arbitration clause is unconscionable—if it were unconscionable, then it would be unenforceable. After thoroughly reviewing the briefing on this issue and the declarations submitted in support thereof, as well as hearing argument from each side at the hearing on the motion, the Court holds that the arbitration provision is valid and enforceable and covers the claims at issue here, such that Google's motion to compel arbitration must be granted and its motion to dismiss must be granted as to the claim for declaratory relief that the arbitration provision is unconscionable.

As an initial matter, Trudeau does not dispute several facts important to deciding these motions. It is undisputed that Trudeau accepted the 2017 TOS and did not follow the arbitration opt out procedures. *See* FACC ¶ 32; Sung Decl. ¶¶ 10, 14–17. It is also undisputed that if Section 13(A) is valid and enforceable as to claims that accrued before the 2017 TOS was enacted (what Trudeau deems to be "retroactive" application), the scope of that provision covers the claims at issue here. *See* 2017 TOS § 13(A) (governing "all disputes and claims between Google and Customer . . . that arise out of or relate in any way to the Programs or these Terms"); Mot. at 12. The key dispute then is whether the arbitration provision can cover claims that accrued before the 2017 TOS was enacted.

It also appears from Trudeau's Opposition that he abandons his declaratory relief claim

7

that the arbitration provision is procedurally and substantively unconscionable. *Compare* FACC ¶¶ 107–114 (seeking declaratory relief that clause is unconscionable) *with* Opp. at 4–14 (arguing arbitration provision is unenforceable for other reasons). To the extent Trudeau has not waived this argument, the Court rejects it and dismisses this cause of action with prejudice. Under California law, a contractual clause is unenforceable only if it is both procedurally and substantively unconscionable. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). The Ninth Circuit has held that "the threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Nagrampa*, 469 F.3d at 1281 (alterations and internal quotation marks omitted)). "[I]f there is an opportunity to opt out," the arbitration agreement is not adhesive, and thus not procedurally unconscionable. *Id.*

This Court finds that the 2017 TOS provided a meaningful opportunity to opt out of the arbitration provision. *Accord Adtrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 1876950, at \*5 (N.D. Cal. Apr. 19, 2018) ("[A]n advertiser's decision to decline the September 2017 AdWords Agreement to avoid being subject to the new arbitration provision is a voluntary choice given that he or she can easily opt out from that provision . . . ."). Trudeau does not meaningfully dispute the voluntariness of the opt out procedure. Thus, the arbitration provision is not procedurally unconscionable and thus not unconscionable. As a result, the Court dismisses Trudeau's claim for declaratory relief under Rule 12(b)(6). Because the Court has taken judicial notice of the facts relevant to Trudeau's unconscionability argument—namely, the existence of and procedure for the voluntary opt-out, as well as the 2017 TOS—the Court finds further amendment would be futile and DISMISSES WITH PREJUDICE the claim for declaratory relief.

Instead, Trudeau argues that the arbitration provision does not apply retroactively for three reasons: (1) the plain language of Section 13(A) in the 2017 TOS "does not say that the new Dispute Resolution Agreement . . . will apply retroactively to already-accrued claims"; (2) the retroactivity provisions in the past versions of the TOS bound Google to making only prospectively applicable changes in future versions of the TOS; and (3) California law, specifically the covenant of good faith and fair dealing, "prohibits the retroactive enforcement of

8

1 late-added contractual terms, at least as to claims that ha[ve] 'accrued' before the clause was
2 added." The Court addresses each argument in turn.

### A. The Plain Language of the 2017 Terms of Service

Trudeau argues that, "on its face, the new arbitration clause in Section 13(A) does not apply retroactively." Opp. at 10. Section 12 of the 2017 TOS states in part that "[o]ther than changes made under Section 13(G), changes to the Terms will not apply retroactively . . . ." 2017 TOS § 12. And Section 13(G) covers only future changes to Section 13's arbitration provision. *Id.* § 13(G). Trudeau argues that Section 12's application exclusively to Section 13(G) indicates that it does *not* apply to Section 13(A) (the arbitration provision), such that the 2017 TOS arbitration provision does not apply retroactively. *See* Opp. at 10–11.

At the same time, Trudeau recognizes that Section 13(A)(2) "seems to imbue [Section 13(A)] with retroactive effect, by providing that the new dispute resolution clause applies to, *inter alia*, 'claims that arose before Customer or Advertiser first accepted any version of these Terms containing an arbitration provision.'" Opp. at 11 (quoting 2017 TOS § 13(A)(2)). Trudeau argues that Section 13(A)(2) must be read in light of Section 12's "general intent" that no term apply retroactively except for changes made pursuant to Section 13(G). *Id.* He also argues that to the extent Section 12 and Section 13(A)(2) can be said to conflict, the only way to reconcile them is to understand Section 13(A)(2) as applying to claims raised under future changes made pursuant to Section 12. *Id.* At the very least, he claims, the contracts' terms are uncertain and should be construed against Google, the drafter, under Cal. Civ. Code § 1654.

The Court finds that Trudeau's argument misses the mark, as argued by Google. *See* Reply at 8–10, ECF 35. Rather than starting with Section 12, the Court starts with the plain language of the arbitration provision. Section 13(A)(2) expressly covers "claims that arose before Customer and Advertiser first accepted any versions of these terms containing an arbitration provision." 2017 TOS § 13(A)(2). On its face then, the arbitration provision applies to claims arising before the 2017 TOS. Trudeau muddies the point by calling this a "retroactive" application of Section 13(A)(2). "Retroactivity" as it relates to this contract is a question of *timing*: Does the provision apply as if it had been enacted at some time prior to the time of its actual enactment?

9

Section 13(A)(2) does not apply retroactively—that is, it does not apply as if it had been enacted prior to the time of its actual enactment. Instead, it applies prospectively from the time of enactment. That the *scope* of Section 13(A) covers claims that accrued prior to enactment does not mean that the Section itself has retroactive application.

This distinction is made clear by Section 12. Section 12 states that Google "may make non-material changes to these [2017] Terms at any time without notice, but Google will provide advance notice of any material changes to these Terms. . . . Other than changes made under Section 13(G), the changes to the Terms will not apply retroactively . . . ." Put simply, Section 12 states that any future changes to the 2017 Terms will not apply as if they had been present in the original 2017 Terms, *i.e.*, as if they had been present in the contract before they were actually enacted. The exception to this provision is for future changes made to the Section 13 Dispute Resolution Agreement pursuant to Section 13(G). Section 12 instructs that those changes *can* have retroactive application, as if they had been present in the TOS all along.

Nothing about the potential retroactivity or nonretroactivity of *future* changes to the 2017 TOS changes the fact that Section 13(A)'s scope, by its plain terms, covers claims that accrued prior to enactment. That is, Section 13(A) need not apply retroactively in order to cover previously accrued claims. As such, the Court finds no conflict or ambiguity in the terms of the 2017 TOS and holds that Section 12 does not preclude Section 13(A) from covering previously accrued claims.

### B. The Impact of Non-Retroactivity Provisions in Previous Versions of the Terms of Service

Trudeau next argues that even if the 2017 TOS does not bar previously accrued claims by its own terms, the existence of non-retroactivity provisions in previous versions of the TOS, which Trudeau signed, precluded the 2017 TOS from covering such claims.[2] *See* Opp. at 13–14. As a representative example, Section 11 of the 2013 TOS states that "[c]hanges [to the terms] will not apply retroactively and will become effective no sooner than fourteen days after they are posted."

---

[2] The Court address Trudeau's argument about the expectations created by these provisions in the next section on the covenant of good faith and fair dealing.

10

*See* 2013 TOS § 11; *accord* Trudeau Decl., Ex. 2 (March 2012 TOS); *Id.*, Ex. 3 (November 2013); *Id.*, Ex. 4 (April 2014); *Id.*, Ex. 5 (October 2017).  Trudeau claims that any application of the 2017 TOS to previously accrued claims would render meaningless Section 11 of the 2013 TOS because the 2017 provision would apply retroactively in direct contradiction to the terms of the 2013 TOS. *See* Opp. at 13–14 (citing California case law requiring that contract terms be construed so as not to be superfluous).  Finally, Trudeau argues that the existence of the opt out provision does not somehow waive the previous non-retroactivity requirement.

Google claims that this argument is wrong for two key reasons.  First, the 2017 TOS is "a novation that extinguished the prior 2013 Terms, including former Section 11." Opp. at 3 (citing Cal. Civ. Code § 1531).  Because Google gave the advertisers notice and the ability to opt out, the 2017 TOS constituted a new contract that superseded the terms of the 2013 TOS in full.  *Id.* (citing *James v. Comcast Corp.*, No. 16-cv-02218-EMC, 2016 WL 4269898, at *3 (N.D. Cal. Aug 15. 2016)).  Second, Google argues that even if 2013 TOS Section 11 still governed, it deals only with changes to the Terms unilaterally implemented by Google and then subsequently posted on its website. *Id.* at 4–5.  Because Google did not simply post the 2017 TOS changes to its website, but instead gave the advertisers direct notice and required express acceptance, Section 11 is inapplicable.

The Court again agrees with Google.  A novation requires (1) a previous valid obligation; (2) the agreement of all parties to the contract; (3) the extinguishment of the old contract; and (4) the validity of the new one. *See James*, 2016 WL 4269898, at *2.  It is clear from the 2017 TOS terms and the context in which it was signed that these requirements are met here.  Each of the requirements save the third is undisputed.  As to the third, by its plain terms, the 2017 TOS terms represent "the parties' entire agreement relating to their subject matter and *supersede any prior or contemporaneous agreements* on those subjects." 2017 TOS § 14(d); *see James*, 2016 WL 4269898 (finding novation where contract with arbitration provision had similar language).  And Section 11 of the 2013 TOS confirms this understanding, as Google points out.  The 2017 TOS was not mere changes enacted by Google and then posted on its website, which advertisers were expected to discover by "look[ing] at the[] Terms regularly," 2013 TOS § 11.  Instead, Google

11

implemented an extensive notice campaign and required that advertisers expressly accept the new 2017 TOS. *See* Sung Decl. ¶¶ 7–9. Likewise, as admitted by Trudeau, the 2017 TOS was the first "substantial" change since the 2013 TOS. Opp. at 3; *see* Sung. Decl. ¶¶ 6–7. Unlike the other TOS versions that Trudeau references, which seemingly were mere modifications posted to the website, the 2017 TOS constituted a significant change that he was required to sign. Each of these facts supports the argument that the 2017 TOS was a novation.

Given the language of the 2017 TOS and the context in which it was implemented, the Court holds that previous versions of the TOS do not bar the 2017 TOS arbitration provision from applying to previously accrued claims.

### C. The Applicability of the Covenant of Good Faith and Fair Dealing Under California Law

Trudeau's final argument is that the arbitration provision is invalid under California's implied covenant of good faith and fair dealing ("covenant") because "[e]very Court of Appeal to have considered whether a party may unilaterally modify an arbitration clause to retroactively cover claims that have already accrued has agreed" that the covenant bars such retroactive application. Opp. at 5; *see id.* at 5–9 (citing cases). According to Trudeau, California appellate courts have followed the decision in *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012), in holding that the covenant "prohibits a party from making unilateral changes to an arbitration agreement that apply retroactively to accrued or known claims because doing so would unreasonably interfere with the opposing party's expectations regarding how the agreement applied to those claims." *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (Ct. App. 2015) (internal quotation marks and alterations omitted).

Trudeau seems to argue both that the retroactivity of the 2017 TOS arbitration provision is unenforceable in its own right, *see* Opp. at 8–9, and that the non-retroactivity provisions in previous versions of the Terms contribute to that conclusion. As to the 2017 TOS themselves, he relies on the *Peleg* line of cases to argue that the retroactivity of an arbitration provision is barred wholesale. As to the other versions of the TOS, Trudeau argues that Google's long line of Terms not allowing for retroactive application would have instilled in the advertisers a reasonable

12

expectation that the 2017 TOS also did not apply retroactively. *See id.* at 8. And, according to Trudeau, the opt out provision would not have changed those expectations.

Google responds that the *Peleg* line of cases are inapposite because they apply only to *unilateral* changes to the arbitration agreement. *See* Reply at 6–8. Google argues by way of example that in *Peleg*, the Court held a contractual term to be illusory because it would have allowed the employer to "amend the contract in anticipation of a specific claim, altering the arbitration process to the employee's detriment" via mere notice to the employee. *Id.* at 6; *see id.* (distinguishing *Cobb*). Google argues that the circumstances are vastly different here, where the advertisers had to accept the agreement and were given multiple opportunities to opt out. Finally, Google argues that the advertisers could not have reasonably expected the arbitration provision not to govern previously accrued claims because the express terms of the 2017 TOS in Section 13(A)(2) demonstrate that such claims are covered. *See* Reply at 5.

The Court agrees with Google that California law does not bar enforcement of the arbitration provision here. The *Peleg* court was concerned with potentially illusory contract terms by which an employer could change the terms of the arbitration provision at any time, even after a dispute had arisen. 204 Cal. App. 4th at 1446 (analogizing to Texas case in which the contract included a clause allowing the employer to "unilaterally modify any of the contract terms," such that "nothing [in the contract] would bind the employer to any of its terms"). The cases that rely on *Peleg* confirm this understanding. *See Cobb*, 233 Cal. App. 4th at 963 ("When one party to a contract *retains the unilateral right to amend* the agreement . . . , its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights" (emphasis added)); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 61 (Ct. App. 2013) (invalidating modification to arbitration provision where employer "unilaterally modified" the agreement based on a provision allowing it to "change or modify [the contract] from time-to-time without advance notice and without the consent of employees."). The 2017 TOS arbitration provision does not run afoul of this caselaw. Google did not unilaterally change the 2017 TOS to add an arbitration provision. Instead, it provided ample notice to the advertisers, required them to accept or decline, and gave them a valid

13

opportunity to opt out. *See* Sung Decl. ¶¶ 7–9; 16–18. Simply put, there was no unilateral amendment of the contract that might render the provision illusory, and thus warrant application of the covenant.

And as to the reasonable expectations of the advertisers, as explained above, the Court does not find the terms of the contract to be uncertain or ambiguous. Section 13(A)(2) expressly applies the arbitration provision to previously accrued claims on its face. The Court finds it would not be reasonable to construe that provision as not applying retroactively, even given the history of the Terms. *See Mohamed*, 848 F.3d at 1211 ("[O]ne who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." (citation omitted)). Thus, the Court holds that the arbitration provision is not invalid as a matter of California law.

Because none of Trudeau's arguments is sufficient to rebut the plain language of the 2017 TOS and because Trudeau expressly accepted those terms and refused to opt out, the Court finds that he is bound by the arbitration provision.

## IV. ORDER

For the foregoing reasons, Defendant's Motion to Compel Arbitration is GRANTED. Each claim that Trudeau has asserted in this action, except his claim for declaratory relief, is subject to arbitration according to the terms of the 2017 Terms of Service. Google's Motion to Dismiss is GRANTED IN PART, as to Trudeau's claim for declaratory relief that the arbitration provision is unconscionable, and TERMINATED AS MOOT IN PART, as to his other claims which are subject to arbitration. There being no remaining claims outside of arbitration, the entire action is DISMISSED WITHOUT PREJUDICE to filing a later action to confirm or vacate the arbitration award.

**IT IS SO ORDERED.**

Dated: October 3, 2018

_____
BETH LABSON FREEMAN
United States District Judge

14